**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

KSENIIA PETROVA,

Plaintiff,

v.

JOSEPH B. EDLOW, Director,
U.S. Citizenship and Immigration Services,

CARRIE M. SELBY, Associate Director,
Service Center Operations,
U.S. Citizenship and Immigration Services

Defendants.

Civil Action No. 26-13023

**COMPLAINT FOR JUDICIAL REVIEW UNDER THE ADMINISTRATIVE PROCEDURE ACT**

## I. INTRODUCTION

Since CBP unlawfully canceled Ms. Petrova's visa on February 16, 2025 and placed her in immigration detention, every immigration benefit or protection to which she is entitled has required federal litigation. Ms. Petrova spent three months in immigration detention[1] before obtaining her release through a habeas proceeding in the District of Vermont.[2]

The Vermont District Court set aside the unlawful visa cancellation by U.S. Customs and Border Protection (CBP) thereby paving the way for Ms. Petrova to be admitted to the United States.[3] But the immigration court nevertheless refused to act until ordered to do so by this Court,

[1] Once it became apparent that Ms. Petrova was likely to prevail in her habeas case, the government initiated a criminal prosecution against her, resulting in another month of detention. In subsequent criminal proceedings, the district court found "more than 'some evidence'" that the prosecution was initiated in response to Ms. Petrova's habeas petition and authorized discovery into her claims of vindictive and selective prosecution. *See United States v. Petrova,* 1:25-cv-10272 (D. Mass. April 1, 2026).
[2] *See Petrova v. Dep't of Homeland Security*, 807 F. Supp. 3d 313 (D. Vt. 2025).
[3] *See Petrova v. Dep't of Homeland Sec*., No. 2:25-cv-240, 2026 WL 936766 (D. Vt. Apr. 7, 2026).

and ultimately issued a decision that effectively ignored the District of Vermont's ruling setting aside the cancellation of Ms. Petrova's visa. Even to obtain employment authorization expressly authorized by Congress, Ms. Petrova was forced to file a separate mandamus action.[4]

This case represents the latest chapter in Ms. Petrova's ongoing struggle to obtain the relief to which she is legally entitled. The denial of Ms. Petrova's petition for classification as an alien of extraordinary ability unfolded against the backdrop of the Administration's highly publicized disputes with Harvard University, where she continues to conduct her scientific research. Despite an extensive administrative record establishing that Ms. Petrova is an internationally recognized computational biologist whose innovations have been independently adopted by leading researchers around the world, U.S. Citizenship and Immigration Services denied her petition by ignoring material evidence, mischaracterizing the record, and applying standards found nowhere in the Immigration and Nationality Act or its implementing regulations. *See* **Exhibit 1**.

## II. PARTIES

1. Plaintiff KSENIIA PETROVA is a computational biologist who has been conducting groundbreaking scientific research at Harvard Medical School since May 2023. Ms. Petrova filed an immigrant petition as "an alien of extraordinary ability" with the U.S. Citizenship and Immigration Services (USCIS).

2. Defendant JOSEPH B. EDLOW is the Director of USCIS. He is responsible for the administration of immigration adjudications and for establishing related policies and priorities. This suit is brought against Director Edlow in his official capacity.

---

[4] *See Petrova v. Edlow*, No. 25-13836 (D. Mass. 2025) (voluntarily dismissed).

3. Defendant CARRIE M. SELBY is the USCIS Associate Director for Service Center Operations. She oversees operations of USCIS Service Centers, including the Texas Service Center which adjudicated Plaintiff's immigrant petition. This suit is brought against Associate Director Selby in her official capacity.

## III. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., and 28 U.S.C. § 1331 (federal question). The APA directs that courts "shall hold unlawful and set aside agency action, findings, and conclusions found to be… arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Court may grant declaratory and injunctive relief pursuant to 5 U.S.C. §§ 702, 706; and 28 U.S.C. §§ 2201–02. The government has waived its sovereign immunity pursuant to 5 U.S.C. § 702.

5. 8 U.S.C. § 1252(a)(2)(B) does not strip this Court of jurisdiction. The agency's decision to deny her immigrant petition is not discretionary in nature. 8 U.S.C. § 1154 provides that the agency "shall" approve a petition if the facts stated in the petition are determined to be true and the petitioner is eligible for the requested classification. Accordingly, this Court has jurisdiction to review the denial.

6. The denial of Plaintiff's Petition constitutes a final agency action as contemplated by 5 U.S.C. § 704. Neither the INA nor DHS regulations at 8 C.F.R. § 103.3(a)(ii) require an administrative appeal of the denial. Accordingly, Plaintiff has no administrative remedies to exhaust.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1), because this is an action against officers and agencies of the United States in their official capacities, and Plaintiff

resides in this District.

## IV. THE *EXTRAORDINARY ABILITY* CLASSIFICATION

8. Congress created the EB-1A immigrant classification to provide permanent residence to individuals who have "extraordinary ability" in the sciences, arts, education, business, or athletics. *See* 8 U.S.C. § 1153(b)(1)(A). Implementing regulations define “extraordinary ability” as “a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor.” 8 C.F.R. § 204.5(h)(2).

9. An individual demonstrates extraordinary ability by showing "sustained national or international acclaim" and that his or her achievements have been recognized through extensive documentation. 8 U.S.C. § 1153(b)(1)(A)(i). A petitioner may establish eligibility by submitting evidence of either a one-time major internationally recognized award or evidence satisfying at least <u>three of ten</u> specified categories of evidence. *See* 8 C.F.R. § 204.5(h)(3)(i)-(x). The five criteria relevant to this case are:

(iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field…;
(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field…;
(v) Evidence of the alien's original scientific… contributions of major significance in the field;
(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;
(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation.

10. Since 2010, USCIS has employed a two-step adjudicative process in evaluating EB-1A petitions. First, it determines whether the petitioner has established the requisite evidentiary criteria under 8 C.F.R. § 204.5(h)(3). If so, USCIS conducts what it refers to as a "final merits determination," evaluating the totality of the evidence to determine whether the petitioner has

demonstrated sustained national or international acclaim and has risen to the very top of the field. This two-step approach has no support in the statute or the regulations. As discussed below, at least one federal court has held that USCIS unlawfully adopted this second-step adjudicative framework without complying with the notice-and-comment requirements of the Administrative Procedure Act.[5]

## V. FACTUAL ALLEGATIONS

**Ms. Petrova's Scientific Background**

11. Ms. Petrova is a computational biologist whose research focuses on computational genomics and the science of aging. In support of her EB-1A petition, Dr. Michael David West – a pioneer in regenerative medicine and aging research – concluded that Ms. Petrova "is certainly one of that small percentage who have risen to the very top of her field." *See* **Exhibit 2A.**

12. In May 2023, Ms. Petrova joined the laboratory of Professor Marc Kirschner, the founding Chair of Harvard Medical School's Department of Systems Biology and one of the world's leading cell biologists.[6]

13. During her work at Harvard Medical School, Ms. Petrova developed computational tools and methodologies for analyzing complex biological data, including *SymphonyPy*, an open-source Python-language implementation of the Symphony single-cell dataset integration algorithm. By porting and releasing this tool in Python – the dominant programming language in modern bioinformatics – Ms. Petrova made a widely used analytical framework accessible to a significantly larger segment of the global scientific community.

---

[5] *Mukherji v. Miller*, No. 4:24-cv-03170 (D. Neb. Jan. 28, 2026).
[6] *See* https://www.kirschnerlab.org/

14. By the time Plaintiff filed her EB-1A petition, her work had already been independently adopted by research teams in multiple countries, cited in leading scientific journals, recognized by internationally renowned scientists, and incorporated into Harvard Medical School's ongoing research program.

**The EB-1A Petition**

15. On January 22, 2026, Plaintiff filed a Form I-140 petition seeking classification as "an alien of extraordinary ability" pursuant to INA § 203(b)(1)(A).

16. The petition was supported by extensive documentary evidence, including:

a. published material in major media discussing Plaintiff's work in the field (8 C.F.R. § 204.5(h)(3)(iii));

b. evidence of her participation as a judge of the work of others in the same field (8 C.F.R. § 204.5(h)(3)(iv));

c. evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field (8 C.F.R. § 204.5(h)(3)(v));

d. evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media (8 C.F.R. § 204.5(h)(3)(vi));

e. evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation (8 C.F.R. § 204.5(h)(3)(viii)).

The evidence included expert opinion letters from internationally recognized scientists, including Professor Marc Kirschner of Harvard Medical School, and Dr. Michael David West, a pioneer in regenerative medicine, who has on many occasions testified before the United States Congress as an expert in the field of biotechnology. Both concluded that Ms. Petrova's scientific contributions were of major significance and that she possesses extraordinary ability in her field. *See* **Exhibits 2A** and **2B**.

**<u>The Request for Evidence</u>**

17. On February 10, 2026, USCIS issued a Request for Evidence (RFE). The RFE acknowledged that Plaintiff had established two of the ten regulatory criteria – authorship of scholarly articles and publications in major media discussing Plaintiff's work – and requested additional evidence relating to original scientific contributions of major significance, participation as a judge of the work of others, and performance in a leading or critical role at Harvard Medical School.

18. Plaintiff timely responded to the RFE with over one hundred pages of additional documentary evidence, including further evidence of independent adoption of *SymphonyPy*, additional evidence of serving as a judge of the work of others, and additional expert opinions, further demonstrating the major significance of Plaintiff's scientific contributions and her critical role at the Kirschner Lab. The response included an expert opinion from Dr. Keith Yamamoto – Vice Chancellor for Science Policy and Strategy at UCSF and an internationally recognized expert in gene regulation. *See* **Exhibit 2C**.

**<u>The Denial</u>**

19. On May 26, 2026, USCIS denied the petition. USCIS conceded that Ms. Petrova had satisfied one additional regulatory criterion (serving as a judge of the work of others in the field), bringing the total number of criteria to the required three out of ten. *See* **Exhibit 1** at 4.

20. USCIS concluded that Ms. Petrova failed to demonstrate original scientific contributions of major significance and a leading or critical role at the Kirschner Lab. *See id.* at 4-5.

21. The denial never mentions *SymphonyPy* – the principal scientific contribution underlying Plaintiff's claim of original contributions of major significance – and fails to acknowledge the

evidence that it has been independently adopted by research teams around the world. The denial concedes that "the petitioner has been highly productive, and that her published data and findings have been relied upon by others in their own research" but concludes that the evidence "does not demonstrate that the petitioner has made an original contribution of major significance in his [sic] field." *Id*.

22. The denial neither identifies nor meaningfully addresses the opinions of the world-renowned scientists who supported Ms. Petrova's EB-1A petition – Dr. Michael David West, Dr. Marc Kirschner, and Dr. Keith Yamamoto. The denial instead brushes the expert opinions aside with boilerplate language stating that "[l]etters, though not without weight, cannot form the cornerstone of a successful extraordinary ability claim." **Exhibit 1** at 4. Without analyzing the substance of any of the letters, the denial summarily concludes that "[t]he authors' assertions in the above-referenced letters… do not establish that the petitioner's work has had a demonstrable impact on the field as a whole commensurate with a contribution of major significance." *Id*.

23. The denial does not explain what exactly the agency considered insufficient in the detailed explanation by Dr. Marc Kirschner of the critical role Ms. Petrova plays in his lab (**Exhibit 2B**). Without analyzing her critical role, which is clearly articulated in the record, the denial summarily concludes that "[t]he letters do not show that the petitioner contributed in a way that is of significant importance to the outcome of the organization." **Exhibit 1** at 5.

24. Despite finding that Ms. Petrova had met three out of ten regulatory criteria, USCIS concluded, in its "final merits" determination, that Ms. Petrova had failed to establish by a preponderance of the evidence that she had sustained national or international acclaim or that she was among the small percentage who have risen to the very top of her field. *See id.* at 6.

25. In denying the petition, USCIS repeatedly imposed evidentiary requirements not found in the Immigration and Nationality Act or its implementing regulations. Among other things, USCIS required Plaintiff to demonstrate that her scientific contributions had been "widely implemented throughout the field" or had "remarkably impacted or influenced the field"; discounted detailed expert opinions absent what it considered "preexisting, independent, and objective evidence"; and required proof that Plaintiff's work was of "significant importance to the outcome of" Harvard University. None of these requirements appears in the Immigration and Nationality Act or the Code of Federal Regulations.

## VI. CLAIMS FOR RELIEF

### COUNT I

### Administrative Procedure Act Violation - § 706(2)(A)

26. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

27. In denying Plaintiff's Petition, USCIS acted in violation of the APA, 5 U.S.C. § 706(2)(A) because the denial was arbitrary and capricious, and not in accordance with law.

28. The denial was "arbitrary and capricious" because "it relied on improper factors, failed to consider pertinent aspects of the problem, [and] offered a rationale contradicting the evidence before it." *Assoc'd Fisheries of Me., Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).

29. The agency's failure to consider material evidence of Plaintiff's original contributions of major significance – including the development of *SymphonyPy* and its independent adoption by research teams around the world – was arbitrary and capricious, and not in accordance with law.

30. The agency's failure to consider the opinions of renowned experts in the field was arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A). *See Chursov v. Miller*, No. 18-cv-2886, 2019 WL 2085199, at *3-4 (S.D.N.Y. May 13, 2019) (finding that USCIS reviewed letters from professionals in the field "without adequate consideration of the light they shed on the significance of scholarly publications" and failed "to adequately explain[] why these submissions do not provide evidence of a contribution of major significance"); *see also* 6 USCIS Policy Manual F. (2)(B)(1) ("Detailed letters from experts in the field explaining the nature and significance of the person's contribution may also provide valuable context for evaluating the claimed original contributions of major significance.")

31. The agency's failure to consider material evidence of Ms. Petrova's critical role at the Kirschner Lab was arbitrary, capricious and not in accordance with law.

32. The agency's imposition of evidentiary requirements not found in the Immigration and Nationality Act or its implementing regulations was arbitrary, capricious, and not in accordance with law. USCIS repeatedly discounted or rejected probative evidence because it failed to satisfy extra-regulatory standards of the agency's own creation, including standards requiring field-wide implementation, extraordinary levels of impact, and documentary corroboration beyond that required by the statute or the regulations.

**COUNT II**

**Administrative Procedure Act Violation - § 706(2)(C), (D)**

33. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

34. In denying Plaintiff's Petition, USCIS acted in violation of the APA, 5 U.S.C. § 706(2)(C) and (D) because the denial was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" and "without observance of procedure required by law."

35. USCIS's "final merits determination" imposes eligibility standards not contained in the statute or the regulations, and thus its adoption by the agency was *ultra vires*. Further, it was adopted through adjudication and policy, rather than notice-and-comment rulemaking. A federal district court has recently held that this framework constitutes a substantive rule that should have been promulgated through notice-and-comment rulemaking. *Mukherji v. Miller*, No. 4:24-cv-03170 (D. Neb. Jan. 28, 2026). Because USCIS relied upon this unlawfully adopted *ultra vires* framework in denying Ms. Petrova's petition, the denial must be vacated.

## VII. PRAYER FOR RELIEF

WHEREFORE, in view of the arguments and authority noted herein, Plaintiff respectfully requests that this Court grant the following relief:

a. Vacate Defendants' denial of Ms. Petrova's EB-1A petition;
b. Order Defendants to approve the petition as required by law;
c. Retain jurisdiction until the adjudication process is completed, to ensure compliance with this Court's orders;
d. Award Plaintiff her costs and reasonable attorney's fees under the Equal Access to Justice Act; and
e. Grant such other relief at law and in equity as the Court deems just and proper.

Dated: June 30, 2026

Respectfully submitted,

*s/ Gregory Romanovsky*______
GREGORY ROMANOVSKY
Romanovsky Law Offices
12 Marshall Street
Boston, MA 02108
617.787.0000
gromanovsky@gmail.com

Attorney for Plaintiff