**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KSENIIA PETROVA,<br><br>Plaintiff, | Civil Action No. 26-13023 |
| v. | |
| JOSEPH B. EDLOW, Director,<br>U.S. Citizenship and Immigration Services,<br><br>CARRIE M. SELBY, Associate Director,<br>Service Center Operations,<br>U.S. Citizenship and Immigration Services<br><br>Defendants. | **FIRST AMENDED COMPLAINT FOR JUDICIAL REVIEW UNDER THE ADMINISTRATIVE PROCEDURE ACT**<br><br>*FILED WITH DEFENDANTS' WRITTEN CONSENT PURSUANT TO FED. R. CIV. P. 15(a)(2)* |

## I. INTRODUCTION

Since CBP unlawfully canceled Ms. Petrova's visa on February 16, 2025 and placed her in immigration detention, every immigration benefit or protection to which she is entitled has required federal litigation. Ms. Petrova spent three months in immigration detention[1] before obtaining her release through a habeas proceeding in the District of Vermont.[2]

The Vermont District Court set aside the unlawful visa cancellation by U.S. Customs and Border Protection (CBP) thereby paving the way for Ms. Petrova to be admitted to the United

[1] Once it became apparent that Ms. Petrova was likely to prevail in her habeas case, the government initiated a criminal prosecution against her, resulting in another month of detention. In subsequent criminal proceedings, the district court found "more than 'some evidence'" that the prosecution was initiated in response to Ms. Petrova's habeas petition and authorized discovery into her claims of vindictive and selective prosecution. Shortly after Judge Sorokin affirmed the discovery order in full, the government abandoned the prosecution and moved to dismiss the indictment with prejudice. *See United States v. Petrova*, No. 1:25-cr-10272-LTS (D. Mass. Nov. 4, 2026).

[2] *See Petrova v. Dep't of Homeland Security*, 807 F. Supp. 3d 313 (D. Vt. 2025).

States.[3] But the immigration court nevertheless refused to act until ordered to do so by this Court, and ultimately issued a decision that effectively ignored the District of Vermont's ruling setting aside the cancellation of Ms. Petrova's visa. Even to obtain employment authorization expressly authorized by Congress, Ms. Petrova was forced to file a separate mandamus action.[4]

This case represents the latest chapter in Ms. Petrova's ongoing struggle to obtain the relief to which she is legally entitled. The denial of Ms. Petrova's petition for classification as an alien of extraordinary ability unfolded against the backdrop of the Administration's highly publicized disputes with Harvard University, where she continues to conduct her scientific research. After Plaintiff filed this action challenging the agency's May 26, 2026 denial (*Exhibit 1*), USCIS reopened the petition on its own motion, conceded that Ms. Petrova satisfies four regulatory criteria – one more than it had recognized in the May denial and more than the three specified in 8 C.F.R. § 204.5(h)(3) – but denied the petition again on November 2, 2026. *See Exhibit 2*. The new denial again ignores or mischaracterizes material evidence, discounts detailed expert assessments without addressing their substance, and applies standards found nowhere in the Immigration and Nationality Act or its implementing regulations.

## II. PARTIES

1. Plaintiff KSENIIA PETROVA is a computational biologist who has been conducting groundbreaking scientific research at Harvard Medical School since May 2023. Ms. Petrova filed an immigrant petition as "an alien of extraordinary ability" with the U.S. Citizenship and Immigration Services (USCIS).

---

[3] *See Petrova v. Dep't of Homeland Sec.*, No. 2:25-cv-240, 2026 WL 936766 (D. Vt. Apr. 7, 2026).
[4] *See Petrova v. Edlow*, No. 25-13836 (D. Mass. 2025) (voluntarily dismissed).

2. Defendant JOSEPH B. EDLOW is the Director of USCIS. He is responsible for the administration of immigration adjudications and for establishing related policies and priorities. This suit is brought against Director Edlow in his official capacity.

3. Defendant CARRIE M. SELBY is the USCIS Associate Director for Service Center Operations. She oversees operations of USCIS Service Centers, including the Texas Service Center which adjudicated Plaintiff's immigrant petition. This suit is brought against Associate Director Selby in her official capacity.

## III. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., and 28 U.S.C. § 1331 (federal question). The APA directs that courts "shall hold unlawful and set aside agency action, findings, and conclusions found to be… arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Court may grant declaratory and injunctive relief pursuant to 5 U.S.C. §§ 702, 706; and 28 U.S.C. §§ 2201–02. The government has waived its sovereign immunity pursuant to 5 U.S.C. § 702.

5. 8 U.S.C. § 1252(a)(2)(B) does not strip this Court of jurisdiction. The agency's decision to deny her immigrant petition is not discretionary in nature. 8 U.S.C. § 1154 provides that the agency "shall" approve a petition if the facts stated in the petition are determined to be true and the petitioner is eligible for the requested classification. Accordingly, this Court has jurisdiction to review the denial.

6. The November 2, 2026 denial of Plaintiff's Petition constitutes a final agency action as contemplated by 5 U.S.C. § 704. Neither the INA nor DHS regulations at 8 C.F.R. § 103.3(a)(1)(ii)

require an administrative appeal of the denial. Accordingly, Plaintiff is not required to pursue any further administrative review before seeking judicial review.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1), because this is an action against officers and agencies of the United States in their official capacities, and Plaintiff resides in this District.

## IV. THE *EXTRAORDINARY ABILITY* CLASSIFICATION

8. Congress created the EB-1A immigrant classification to provide permanent residence to individuals who have "extraordinary ability" in the sciences, arts, education, business, or athletics. *See* 8 U.S.C. § 1153(b)(1)(A). Implementing regulations define “extraordinary ability” as “a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor.” 8 C.F.R. § 204.5(h)(2).

9. An individual demonstrates extraordinary ability by showing "sustained national or international acclaim" and that his or her achievements have been recognized through extensive documentation. 8 U.S.C. § 1153(b)(1)(A)(i). A petitioner may establish eligibility by submitting evidence of either a one-time major internationally recognized award or evidence satisfying at least <u>three of ten</u> specified categories of evidence. *See* 8 C.F.R. § 204.5(h)(3)(i)-(x). The five criteria relevant to this case are:

> (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field…;
> (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field…;
> (v) Evidence of the alien's original scientific… contributions of major significance in the field;
> (vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;
> (viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation.

10. Since 2010, USCIS has employed a two-step adjudicative process in evaluating EB-1A petitions. First, it determines whether the petitioner has established the requisite evidentiary criteria under 8 C.F.R. § 204.5(h)(3). If so, USCIS conducts what it refers to as a "final merits determination," evaluating the totality of the evidence to determine whether the petitioner has demonstrated sustained national or international acclaim and has risen to the very top of the field. This two-step approach has no support in the statute or the regulations. As discussed below, at least one federal court has held that USCIS unlawfully adopted this second-step adjudicative framework without complying with the notice-and-comment requirements of the Administrative Procedure Act.[5]

## V. FACTUAL ALLEGATIONS

**Ms. Petrova's Scientific Background**

11. Ms. Petrova is a computational biologist whose research focuses on computational genomics and the science of aging. In support of her EB-1A petition, Dr. Michael David West—a pioneer in regenerative medicine and aging research—concluded that Ms. Petrova "is certainly one of that small percentage who have risen to the very top of her field." *See Exhibit 3A*. Dr. Martin Chalfie, a 2008 Nobel Prize laureate, likewise concluded that "Ms. Petrova has achieved sustained national and international acclaim, that her achievements have been recognized in the field of bioinformatics, and that she is among the small percentage of scientists who have risen to the very top of that field." *See Exhibit 3B*. Dr. Chalfie further stated that he would "welcome her as a colleague . . . at Columbia and as a potential collaborator." *Id.*

---

[5] *Mukherji v. Miller*, No. 4:24-cv-03170 (D. Neb. Jan. 28, 2026).

12. In May 2023, Ms. Petrova joined the laboratory of Professor Marc Kirschner, the founding Chair of Harvard Medical School's Department of Systems Biology and one of the world's leading cell biologists.[6]

13. During her work at Harvard Medical School, Ms. Petrova developed computational tools and methodologies for analyzing complex biological data, including *SymphonyPy*, an open-source Python-language implementation of the Symphony single-cell dataset integration algorithm. By porting and releasing this tool in Python – the dominant programming language in modern bioinformatics – Ms. Petrova made a widely used analytical framework accessible to a significantly larger segment of the global scientific community.

14. By the time Plaintiff filed her EB-1A petition, her work had already been independently adopted by research teams in multiple countries, cited in leading scientific journals, recognized by internationally renowned scientists, and incorporated into Harvard Medical School's ongoing research program.

**<u>The EB-1A Petition</u>**

15. On January 22, 2026, Plaintiff filed a Form I-140 petition seeking classification as "an alien of extraordinary ability" pursuant to INA § 203(b)(1)(A).

16. The petition was supported by extensive documentary evidence, including:

a. published material in major media discussing Plaintiff's work in the field (8 C.F.R. § 204.5(h)(3)(iii));

b. evidence of her participation as a judge of the work of others in the same field (8 C.F.R. § 204.5(h)(3)(iv));

c. evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field (8 C.F.R. § 204.5(h)(3)(v));

[6] *See* https://www.kirschnerlab.org/

d. evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media (8 C.F.R. § 204.5(h)(3)(vi));

e. evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation (8 C.F.R. § 204.5(h)(3)(viii)).

The evidence included expert opinion letters from internationally recognized scientists, including Professor Marc Kirschner of Harvard Medical School, and Dr. Michael David West, a pioneer in regenerative medicine, who has on many occasions testified before the United States Congress as an expert in the field of biotechnology. Both concluded that Ms. Petrova's scientific contributions were of major significance and that she possesses extraordinary ability in her field. *See Exhibits 3A*, *3C*.

**The Request for Evidence**

17. On February 10, 2026, USCIS issued a Request for Evidence (RFE). The RFE acknowledged that Plaintiff had established two of the ten regulatory criteria – authorship of scholarly articles and publications in major media discussing Plaintiff's work – and requested additional evidence relating to original scientific contributions of major significance, participation as a judge of the work of others, and performance in a leading or critical role at Harvard Medical School.

18. Plaintiff timely responded to the RFE with over one hundred pages of additional documentary evidence, including further evidence of independent adoption of *SymphonyPy*, additional evidence of serving as a judge of the work of others, and additional expert opinions, further demonstrating the major significance of Plaintiff's scientific contributions and her critical role at the Kirschner Lab. The response included an expert opinion from Dr. Keith Yamamoto –

Vice Chancellor for Science Policy and Strategy at UCSF and an internationally recognized expert in gene regulation. *See Exhibit 3D.*

**The Denial**

19. On May 26, 2026, USCIS denied the petition. USCIS conceded that Ms. Petrova had satisfied one additional regulatory criterion (serving as a judge of the work of others in the field), bringing the total number of criteria to the required three out of ten. *See Exhibit 1* at 4.

20. USCIS concluded that Ms. Petrova failed to demonstrate original scientific contributions of major significance and a leading or critical role at the Kirschner Lab. *See id*. at 4-5.

21. The denial never mentioned *SymphonyPy* – the principal scientific contribution underlying Plaintiff's claim of original contributions of major significance – and failed to acknowledge the evidence that it has been independently adopted by research teams around the world. The denial conceded that "the petitioner has been highly productive, and that her published data and findings have been relied upon by others in their own research" but concluded that the evidence "does not demonstrate that the petitioner has made an original contribution of major significance in his [sic] field." *Id*.

22. The denial neither identified nor meaningfully addressed the opinions of the world-renowned scientists who supported Ms. Petrova's EB-1A petition – Dr. Michael David West, Dr. Marc Kirschner, and Dr. Keith Yamamoto. The denial instead brushed the expert opinions aside with boilerplate language stating that "[l]etters, though not without weight, cannot form the cornerstone of a successful extraordinary ability claim." *Exhibit 1* at 4. Without analyzing the substance of any of the letters, the denial summarily concluded that "[t]he authors' assertions in the above-referenced letters… do not establish that the petitioner's work has had a demonstrable impact on the field as a whole commensurate with a contribution of major significance." *Id.*

23. The denial did not explain what exactly the agency considered insufficient in the detailed explanation by Dr. Marc Kirschner of the critical role Ms. Petrova plays in his lab (*Exhibit 3C*). Without analyzing her critical role, which is clearly articulated in the record, the denial summarily concluded that "[t]he letters do not show that the petitioner contributed in a way that is of significant importance to the outcome of the organization." *Exhibit 1* at 5.

24. Despite finding that Ms. Petrova had met three out of ten regulatory criteria, USCIS concluded, in its "final merits" determination, that Ms. Petrova had failed to establish by a preponderance of the evidence that she had sustained national or international acclaim or that she was among the small percentage who have risen to the very top of her field. *See id.* at 6.

25. In denying the petition, USCIS repeatedly imposed evidentiary requirements not found in the Immigration and Nationality Act or its implementing regulations. Among other things, USCIS required Plaintiff to demonstrate that her scientific contributions had been "widely implemented throughout the field" or had "remarkably impacted or influenced the field"; discounted detailed expert opinions absent what it considered "preexisting, independent, and objective evidence"; and required proof that Plaintiff's work was of "significant importance to the outcome of" Harvard University. None of these requirements appears in the Immigration and Nationality Act or the Code of Federal Regulations.

**<u>USCIS Reopens the Petition and Denies It Again</u>**

26. On June 30, 2026, Plaintiff filed this action challenging the May 26 denial under the Administrative Procedure Act.

27. On September 1, 2026, while this action was pending, USCIS reopened the petition on its own motion. On September 16, 2026, USCIS issued a Notice of Intent to Deny (NOID). In doing

so, USCIS reversed one of the findings in its original denial and acknowledged that Ms. Petrova had also established a leading or critical role for the distinguished Kirschner Laboratory at Harvard Medical School. USCIS therefore conceded that Ms. Petrova satisfied not three, but four of the ten regulatory criteria, but concluded that she nevertheless had not demonstrated the sustained national or international acclaim required for the extraordinary ability classification.

28. Plaintiff timely responded to the NOID on October 19, 2026. The response documented the independent use of *SymphonyPy*, addressed the scientific significance of Plaintiff's Xenopus atlas, and explained why the expert opinions already in the record corroborated Ms. Petrova's contributions of major significance to the field of bioinformatics.

29. Plaintiff also submitted an independent assessment from Professor Martin Chalfie of Columbia University, a 2008 Nobel Prize laureate, who had never met, supervised, or collaborated with Ms. Petrova and based his opinion on an independent review of her scientific work. Professor Chalfie concluded that Ms. Petrova had achieved sustained national and international acclaim and was among the small percentage of scientists who had risen to the very top of the field of bioinformatics. *See Exhibit 3B*.

30. On November 2, 2026, USCIS denied the petition again. *See Exhibit 2*. The new decision expressly acknowledges that Ms. Petrova satisfies four regulatory criteria, including a leading or critical role at the Kirschner Laboratory. *Id*. at 3. USCIS nevertheless concluded that she had not established original scientific contributions of major significance and independently concluded that she had not satisfied the agency's separate final-merits requirement. *Id*. at 4-8.

31. The new denial again mischaracterizes the record concerning Ms. Petrova's contributions to the field. Plaintiff's NOID response once again demonstrated that Ms. Petrova is the principal developer of *SymphonyPy*, a Python implementation of the Symphony single-cell dataset

integration algorithm, and that researchers in the United States, Sweden, Spain, Germany, Switzerland, Japan, and the United Kingdom had independently used or relied on the tool in scientific work, including publications in Nature Medicine, Nature Methods, and Science. The denial nevertheless reduces this evidence to the statement that SymphonyPy "was published on GitHub and subsequently garnered three citations." *Exhibit 2* at 6.

32. The denial likewise fails to meaningfully address the evidence concerning Plaintiff's Xenopus atlas. Plaintiff's response explained that the atlas's detailed cellular map and discoveries concerning germ cells constituted a fundamental advance in Xenopus developmental biology, as independently described by Dr. Martin Chalfie and Dr. Michael David West.

33. USCIS also failed to meaningfully engage with the expert opinions. The decision selectively extracts forward-looking language from the opinions of Dr. Keith Yamamoto and Professor Martin Chalfie, then uses those isolated passages to characterize the expert evidence as merely "predictive" and "conclusory." *Exhibit 2* at 4-5. In doing so, USCIS fails to address the portions of those same opinions that evaluate Ms. Petrova's completed scientific accomplishments, explain the significance of work she had already performed, and assess the recognition and impact those accomplishments had already achieved.

34. The treatment of Professor Chalfie's opinion is particularly revealing. USCIS quotes his discussion of the future discoveries that Plaintiff's Xenopus work will enable, but does not address his assessment of the completed work itself or his express conclusion that Plaintiff has already achieved sustained national and international acclaim and risen to the very top of her field. *See id.* at 4.

35. The denial again ignores the expert opinion by Dr. West, even though his independent declaration explains the significance of Plaintiff's completed work from the perspective of a pioneer in regenerative medicine and aging research.

36. USCIS further imposed evidentiary requirements that do not appear in 8 C.F.R. § 204.5(h)(3)(v). The decision states that a contribution of major significance can be expected to have been "reproduced and confirmed by other experts and applied in their own work," and ultimately declares that "[w]ithout independent, documentary evidence" demonstrating major significance, USCIS "cannot conclude this criterion has been met." *Exhibit 2* at 5-6. USCIS also faults Plaintiff for failing to provide comparative citation data. *Id*. at 5. The agency thus treated extra-regulatory evidentiary considerations as prerequisites to satisfying the regulatory criterion.

37. The final-merits analysis repeats the same atomized approach reflected elsewhere in the decision: USCIS examines each accepted criterion separately, explains why that criterion standing alone does not establish sustained acclaim, and then announces that the evidence as a whole is insufficient without meaningfully evaluating the combined probative force of the record. *Id.* at 6-8. USCIS then announces that the "totality of the evidence" is insufficient without explaining the combined probative force of those accepted criteria together with the evidence of Plaintiff's scientific contributions and the independent expert assessments.

38. This is the same mode of analysis rejected in *Chursov v. Miller*, another case involving a computational biologist and the original-contributions criterion. No. 18-cv-2886 (PKC), ECF No. 46, at 7-10 (S.D.N.Y. May 13, 2019). There, the court held that USCIS acted arbitrarily and capriciously by excessively focusing on individual components of the submission instead of adequately considering the record as a whole, including the light expert opinions shed on the significance of the petitioner's scientific work.

39. Considered cumulatively, the record includes four regulatory criteria expressly conceded by USCIS; independent use of Plaintiff's software by researchers across multiple countries; a first-author Xenopus atlas whose scientific significance is explained by independent experts; Plaintiff's

foundational computational work for a distinguished Harvard laboratory; and assessments from leading scientists including Dr. West, Dr. Yamamoto, Professor Kirschner, and Professor Chalfie. USCIS did not provide a reasoned explanation for why that body of evidence, considered as a whole under the preponderance standard, fails to establish the statutory and regulatory requirements.

## VI. CLAIMS FOR RELIEF

### COUNT I

### Administrative Procedure Act Violation - § 706(2)(A)

40. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

41. In denying Plaintiff's Petition on November 2, 2026, USCIS acted in violation of the APA, 5 U.S.C. § 706(2)(A), because the denial was arbitrary and capricious, and not in accordance with law.

42. The denial was "arbitrary and capricious" because it relied on improper factors, failed to consider pertinent aspects of the problem, and offered rationales that do not reasonably account for the evidence before the agency. *Assoc'd Fisheries of Me., Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).

43. The agency's treatment of Plaintiff's original scientific contributions was arbitrary and capricious. USCIS disregarded the evidence in the record and failed to meaningfully evaluate the scientific evidence concerning SymphonyPy and the Xenopus atlas.

44. The agency's treatment of the expert evidence was likewise arbitrary and capricious. USCIS did not address Dr. West's independent assessment at all and selectively quoted other experts before dismissing the letters collectively as predictive or conclusory, without identifying a

material defect in their scientific reasoning. *See Chursov v. Miller*, No. 18-cv-2886 (PKC), ECF No. 46, at 7-10 (S.D.N.Y. May 13, 2019); *see also* 6 USCIS Policy Manual F.2(B)(1) (recognizing that detailed expert letters may provide valuable context in evaluating original contributions of major significance).

45. USCIS also failed to conduct the cumulative assessment its own final-merits framework purports to require. Rather than evaluate the combined probative force of the evidence, the decision considered each of the four conceded regulatory criteria in isolation and explained why no single criterion independently demonstrated sustained acclaim, before announcing that the totality of the evidence was insufficient. That approach is arbitrary and capricious. *See Chursov*, ECF No. 46, at 7.

46. Finally, USCIS treated extra-regulatory evidentiary considerations as mandatory prerequisites, including independent documentary corroboration beyond expert opinion, reproduction and confirmation by other experts, and comparative citation statistics. By rejecting probative evidence because it did not satisfy standards found nowhere in the statute or regulations, USCIS acted arbitrarily, capriciously, and not in accordance with law.

## COUNT II

**<u>Administrative Procedure Act Violation - § 706(2)(C), (D)</u>**

47. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

48. In denying Plaintiff's Petition, USCIS acted in violation of the APA, 5 U.S.C. § 706(2)(C) and (D), because the denial was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" and "without observance of procedure required by law."

49. USCIS's "final merits determination" imposes an independently dispositive eligibility framework not contained in the statute or regulations, and its adoption through adjudication and

agency policy rather than notice-and-comment rulemaking was *ultra vires*. A federal district court has held that this framework constitutes a substantive rule that should have been promulgated through notice-and-comment rulemaking and, alternatively, that USCIS inadequately explained its application of the framework. *Mukherji v. Miller*, No. 4:24-cv-03170, at 12-17 (D. Neb. Jan. 28, 2026). Because USCIS relied on that unlawfully adopted framework in denying Ms. Petrova's petition, the denial must be vacated.

## VII. PRAYER FOR RELIEF

WHEREFORE, in view of the arguments and authority noted herein, Plaintiff respectfully requests that this Court grant the following relief:

a. Vacate Defendants' denial of Ms. Petrova's EB-1A petition;

b. Order Defendants to approve the petition as required by law;

c. Retain jurisdiction until the adjudication process is completed, to ensure compliance with this Court's orders;

d. Award Plaintiff her costs and reasonable attorney's fees under the Equal Access to Justice Act; and

e. Grant such other relief at law and in equity as the Court deems just and proper.

Dated: November 11, 2026

Respectfully submitted,

*s/ Gregory Romanovsky*______
GREGORY ROMANOVSKY
Romanovsky Law Offices
12 Marshall Street
Boston, MA 02108
617.787.0000
gromanovsky@gmail.com

**CERTIFICATION PURSUANT TO FED. R. CIV. P. 15(a)(2)**

I certify that I conferred with counsel for Defendants, who assented to the filing of this amended complaint.

By: */s/ Gregory Romanovsky*
Gregory Romanovsky, Esq.

**CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

By: */s/ Gregory Romanovsky*
Gregory Romanovsky, Esq.